IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>NICHOLAS F. PECK, et al,<br><br>Defendants. | MEMORANDUM DECISION AND<br>ORDER ON *JAMES* ISSUES<br><br><br><br>Case No. 2:07-CR-173 TS |

This matter comes before the Court subsequent to a *James*[1] hearing that addressed issues related to the admissibility of coconspirator statements under Federal Rule of Evidence 801(d)(2)(E). As discussed below, the Court finds that a conspiracy existed, that Defendants Nicholas F. Peck, Abraham J. Elliott, Levi B. Elliott, and Caesar Martinez were members of the conspiracy, and that the coconspirator statements were made in the course of and in furtherance of the conspiracy. The Court finds that the evidence presently before the Court does not establish that Defendants Cedric Duane Burks and John P. Guerrero were members of the conspiracy.

---

[1]*United States v. James*, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917 (1979).

## I.  BACKGROUND

In addition to other substantive offenses, all Defendants were originally charged with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343, and Defendants Nicholas Peck and James Peck were charged with conspiracy to transport stolen motor vehicles in interstate commerce, in violation of 18 U.S.C. §§ 371 and 2312.[2]  Defendant Nicholas Peck filed a Motion for *James* hearing on June 14, 2007,[3] with the remaining defendants joining the Motion or filing separate Motions for *James* hearing on the following dates: (1) Defendant Abraham Elliott on June 18, 2007;[4] (2) Defendant John Guerrero on June 20, 2007;[5] (3) Defendant Levi Elliott on June 22, 2007;[6] and (4) Defendant Caesar Martinez on September 27, 2007.[7]

A *James* hearing was held on February 1, 2008, and Defendants Levi Elliott, John Guerrero, and Caesar Martinez filed memoranda.[8]  Prior to completion of briefing on the Motions for *James* hearing, however, the government filed a Motion to Stay *James* Proceedings and Extend Briefing Schedule, on May 1, 2008.[9]  The government indicated its intent to file a superceding indictment,

---

[2]Docket No. 7.

[3]Docket No. 99.

[4]Docket No. 109.

[5]Docket No. 111.

[6]Docket No. 117.

[7]Docket No. 145.  Original co-Defendant Sean Reid filed a Motion for *James* hearing on November 16, 2007, Docket No. 149, but has since been dismissed from the case.  *See* Docket No. 216.  Defendant Stephen Kirk filed a Motion for *James* hearing on June 25, 2007, Docket No. 120, but has since entered a plea of guilty to Count 3 of the Superceding Indictment.

[8]Docket Nos. 186, 187, and 199.

[9]Docket No. 207.

which could alter the relevant arguments on admissibility of alleged co-conspirator statements. The *James* proceedings were stayed by the Court's Order of May 2, 2008,[10] and the Superceding Indictment was filed on June 4, 2008.[11]

In addition to other substantive offenses, the Superceding Indictment charges Defendant Nicholas Peck with conspiracy to transport motor vehicles in interstate commerce, in violation of 18 U.S.C. §§ 371 and 2312, and Defendants Nicholas Peck, Abraham Elliott, and Caesar Martinez with conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841 and 846. Moreover, the Superceding Indictment alleges that Defendants Nicholas Peck, Abraham Elliott, Levi Elliott, Cedric Duane Burks, John Guerrero, and Caesar Martinez were involved in a conspiracy to engage in wire fraud, in violation of 18 U.S.C. § 1343. Notably, the government alleges the wire fraud activity and the drug activity were all part of a single conspiracy, and that the conspiracy had, as its primary components: (1) the theft and resale of high-end luxury vehicles; and (2) the trafficking of controlled substances using some of the stolen vehicles.

A second *James* hearing was held on December 11, 2008, in response to a Second Motion for *James* hearing, filed by Defendant Caesar Martinez.[12] Prior to the second *James* hearing, the government had submitted written proffers of the alleged coconspirator statements and evidentiary proffers.[13] In connection with the hearing, the government submitted an additional sealed proffer

---

[10]Docket No. 208.

[11]Docket No. 216.

[12]Docket No. 291.

[13]Docket Nos. 160, 171, 172, 174, and 263.

3

of evidence and memorandum in support of the admissibility of the coconspirator statements.[14]  No memoranda regarding *James* issues were filed subsequent to the second *James* hearing, either by Defendants or by the government.

The list of alleged coconspirator statements are therefore described in the government's Notice of Coconspirator (*James*) Statements,[15] Notice of Transmittal of Documents for *James* hearing to District Court,[16] Supplemental Notice of Coconspirator (*James*) Statements,[17] Second Supplemental Notice of Coconspirator (*James*) Statements,[18] and a Sealed Consolidated *James* Proffer.[19]

## II.  FINDINGS OF FACT

For purposes of determining the admissibility of coconspirator statements under Rule 801(d)(2)(E) only, the Court enters the following findings of fact:

At some point prior to January 2005, Defendants Abraham Elliott and Levi Elliott commenced a criminal enterprise in which they stole high-end motor vehicles.  With the help of Defendants Cedric Burks, John Guerrero, and Sean Reid, among others, the vehicles were stripped and allowed to be recovered, and then the enterprise purchased the vehicles at auction and

---

[14]Docket No. 320.

[15]Docket No. 160 at 3-10.

[16]Docket No. 171, Attachment A.

[17]Docket No. 172 at 2-3.

[18]Docket No. 263 at 2.

[19]Docket No. 320 at 2-5.

reassembled the vehicles with previously stripped parts.  The enterprise was also engaged in the distribution of cocaine and utilized some of the stolen vehicles to transport drugs.

From at least January 2005 to June 2005, Burks obtained key codes from a source who worked for a Las Vegas, Nevada, GM dealership.  Using these codes, Abraham Elliott and Levi Elliott were easily able to steal the vehicles.  In June 2005, Burks was arrested after he and Levi Elliott attempted to sell a stolen vehicle to police.  After Burks' arrest, Defendant Nicholas Peck contacted his relative, James Peck, who worked for an Atlanta, Georgia, dealership.  Nicholas Peck obtained Vehicle Identification Numbers from other members of the enterprise, including a text message from Guerrero on September 11, 2006.  Nicholas Peck then provided the VINs to James Peck, who obtained the key codes for the vehicles.  The vehicles were then stolen.

Prior to January 27, 2005, Levi Elliott had arranged to sell two stolen vehicles to undercover officers.  On January 27, 2005, Levi Elliott arrived at the location, but became suspicious and called Guerrero on his cell phone.  Levi Elliott later attempted to flee in a car driven by Guerrero.  On August 5, 2005, police conducted a consent search of Guerrero's Las Vegas residence.  They found parts to a 2004 Chevy Tahoe and a 2004 Cadillac Escalade, all with the VINs destroyed.  Guerrero also sold a key code to a Chevy Impala which was later stolen.

On March 3, 2006, Nicholas Peck asked an undercover FBI agent for assistance in locating an individual who had disappeared while doing a drug run for Nicholas Peck and Abraham Elliott, along with either the drugs or money.  The drug runner had been driving a pearl-colored Cadillac Escalade (the "Pearl SUV"), and Nicholas Peck was eventually able to find the drug runner by tracking the Pearl SUV.  Peck and Abraham Elliott had been taking the drug runner to Martinez's residence in order to resolve the issue when the drug runner had escaped.

One vehicle whose key code was obtained, a black Cadillac Escalade (the "Black SUV"), was stolen in Las Vegas on April 26-27, 2005, and recovered in Salt Lake City, Utah, in April 2006. Abraham Elliott was observed at the insurance auction where the stripped vehicle was being sold, attempting to purchase it through a third party.  It was found in the possession of Defendant Caesar Martinez ("Martinez").  A key made from the key code associated with the vehicle's original VIN opened and operated the vehicle, confirming that it was the vehicle originally stolen in Las Vegas. At the time the Black SUV was seized from Martinez, he was living next door to Nicholas Peck, renting the house from Nicholas Peck's grandfather.  When asked about the Black SUV, Nicholas Peck responded that it was a deal solely between Abraham Elliott and Martinez.

After the Black SUV was confiscated by police, a drug sniffing dog alerted on the vehicle, but no drugs were found.  Martinez and Abraham Elliott both attempted to reclaim the Black SUV. When Abraham Elliott attempted to recover the Black SUV on May 10, 2006, he was accompanied by Nicholas Peck.  Instead, however, Abraham Elliott was arrested for possession of a stolen vehicle. Martinez kept Abraham Elliott's personal belongings while Abraham Elliott was incarcerated.

Search warrants were obtained for two residences maintained by Martinez.  At the first, officers found a firearm, drug packaging materials, several drug ledgers, including one with Nicholas Peck's name, and a sheet with what appears to be a VIN or partial VIN for a GM vehicle.  At the second residence, officers found a cache of parts to with the VINs destroyed, and which matched the description of the Pearl SUV.

At some point in 2006, the enterprise expanded to include Salt Lake City, and Nicholas Peck began to run the enterprise's operations in Salt Lake.  Along with other unnamed associates, Nicholas Peck stole three other vehicles using key codes obtained by James Peck.  Those vehicles were then sold to an undercover FBI agent.

6

III.  ANALYSIS

Under Fed. R. Evid. 801(d)(2)(E), statements by co-conspirators are properly admissible as non-hearsay at trial if the Court determines, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy.[20]  It is the burden of the government to prove each of the elements by a preponderance of the evidence and it is the trial court that determines admissibility.[21]  In deciding whether the prerequisites for admission of the co-conspirator statements have been satisfied, the Court may consider the co-conspirator statements sought to be admitted as evidence of the conspiracy.[22]  The Tenth Circuit has held, however, that "there need . . . be some independent evidence linking the defendant to the conspiracy."[23]  "Such independent evidence may be sufficient even when it is not 'substantial.'"[24]  The Tenth Circuit has defined "independent evidence" as "evidence other than the proffered [co-conspirator] statements themselves."[25]

A.    EXISTENCE OF A CONSPIRACY

The first element the Court must consider is the existence of a conspiracy.  "To prove conspiracy, the government must show (1) two or more persons agreed to violate the law, (2) the

---

[20]*United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994).

[21]*Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

[22]*United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).

[23]*United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987).

[24]*Lopez-Gutierrez*, 83 F.3d at 1242.

[25]*Martinez*, 825 F.2d at 1451.

defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent."[26]

    1.    *Agreement*

"'To prove an agreement, the government need not offer direct proof of an express agreement on the part of the defendant. Instead the agreement may be informal and may be inferred entirely from circumstantial evidence.'"[27] However, it is not enough for the government to show only mere association with conspirators known to be involved in crime; casual transactions between the defendant and conspirators known to be involved in the crime; or a buyer-seller relationship between the defendant and a member of the conspiracy.[28]

The government has presented sufficient evidence to show that there was an agreement to violate the law in this case. The essential objectives of the conspiracy in this case were to obtain money by: (1) stealing high-end vehicles using fraudulently obtained key codes, stripping the cars, purchasing the recovered stripped cars at auction, reassembling them, and re-selling them; and (2) distributing controlled substances, specifically cocaine, using certain of the stolen and reassembled vehicles. The government has presented sufficient evidence to show that multiple individuals, including Abraham Elliott, Levi Elliott, Nicholas Peck, and Martinez, knew of the essential objectives of the conspiracy.

Abraham Elliott, Levi Elliott, and Nicholas Peck ran the enterprise and were involved in the sale of reassembled vehicles. Nicholas Peck solicited key codes associated with specific VINs.

---

[26]*United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).

[27]*United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (quoting *United States v. Lang*, 364 F.3d 1210, 1223 (10th Cir. 2004)).

[28]*United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992).

Abraham Elliott and Nicholas Peck were involved in attempting to locate an individual who had disappeared with either their cocaine or the proceeds of a sale of that cocaine. James Peck and Burks provided key codes which were to be used to steal the vehicles, and exhibit an understanding of the conspiracy's mechanisms for using the key codes to steal vehicles. Guerrero assisted in the attempted sale of at least two stolen vehicles and was later found in possession of parts from stolen vehicles, exhibiting an understanding of the conspiracy's mechanisms for using stripped parts to reassemble the vehicles. Martinez was to assist in "resolving" the issue of the fugitive drug dealer and was found in possession of a vehicle that had been reassembled by the enterprise, parts to another stolen vehicle, a firearm, drug ledgers, and drug paraphernalia. The evidence recovered from Martinez exhibits an understanding by Martinez of the conspiracy's internal mechanisms for distributing drugs and using stolen parts to reassemble stripped vehicles.

The government has failed, however, to show that Burks and Guerrero were part of the conspiracy. Both Burks and Guerrero exhibited an understanding of the enterprise's intent to engage in wire fraud with the intent to profit from stolen vehicles, an essential objective of the enterprise. However, distribution of controlled substances was also an essential objective of the enterprise alleged by the government, and there is no evidence that Defendants Burks and Guerrero knew that the enterprise involved distribution of controlled substances.

2. *Knowledge and Voluntary Participation*

"A defendant may be convicted of a conspiracy only if the government proves that the defendant had knowledge of the conspiracy and voluntarily participated therein. A conspirator need not know of the existence or identify of the other members of the conspiracy or the full extent of the

conspiracy, but he or she must have a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator."[29]

The government has presented sufficient evidence to show that Abraham Elliott, Levi Elliott, Nicholas Peck, and Martinez knowingly and voluntarily took part in the conspiracy.  As discussed above, Abraham Elliott, Levi Elliott, and Nicholas Peck were aware of the full extent of the conspiracy, including the theft and sale of the vehicles and the distribution of controlled substances. Nicholas Peck solicited the key codes from James Peck and Burks, who voluntarily provided them knowing that they would be used to steal vehicles.  Guerrero assisted in the sale of stolen vehicles, sent text messages regarding the VINs of vehicles to be stolen, and was found in possession of stolen vehicle parts.   Martinez was found with drug paraphernalia and ledgers, as well as stripped parts from stolen vehicles.  Martinez was also found in possession of a vehicle that had been reassembled by other members of the conspiracy.  Martinez therefore exhibits an awareness of the full scope and objectives of the conspiracy.

The government has failed, however, to provide sufficient evidence that Burks and Guerrero knew of the drug smuggling arm of the conspiracy, which is an essential objective of the enterprise alleged by the government.  The evidence is therefore insufficient to show that Burks and Guerrero knowingly and voluntarily took part in the conspiracy.

3.    *Interdependence*

"Interdependence exists when 'each alleged coconspirator . . . depend[s] on the successful operation of each 'link' in the chain to achieve the common goal.'"[30]  "In other words, each

---

[29]*Evans*, 970 F.2d at 669–70 (internal quotation marks and citation omitted).

[30]*Yehling*, 456 F.3d at 1241 (quoting *United States v. Dickey*, 736 F.2d 571, 582 (10th Cir. 1984)).

coconspirator's 'actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole.'"[31]

The government has provided sufficient evidence of interdependence with regard to Abraham Elliott, Levi Elliott, Nicholas Peck, and Martinez.  Nicholas Peck, Guerrero, and others provided the VINs, which were used by James Peck and Burks to obtain the key codes, which were then used to steal the vehicles.  Without the VINs, key codes would have to be selected at random, and would be useless to the conspiracy.  Similarly, obtaining the key codes allowed the conspiracy to easily steal the vehicles.  Once the vehicles were stolen and stripped, it was essential that the parts be stored, as they were by Guerrero and Martinez, until the stripped vehicles could be purchased at auction and reassembled.  The vehicles could then either be sold by Abraham Elliott, Levi Elliott, or Nicholas Peck, or they could be used to conduct the cocaine distribution arm of the conspiracy, as conducted by Nicholas Peck and Martinez.  Each link of the chain between providing VINs to selling or using the vehicles to transport drugs was essential to the functioning of the conspiracy.

The government has failed to provide sufficient evidence to show interdependence between Burks and Guerrero and the drug trafficking arm of the conspiracy.  Burks' and Guerrero's actions were interdependent with the auto-theft arm of the conspiracy, but there is no evidence before the Court that there was any interdependence between Burks' and Guerrero's theft of key codes and trafficking in controlled substances engaged in by the enterprise.

Based on the above, the government has shown, by a preponderance of the evidence, the existence of a conspiracy.  The government has shown that a conspiracy existed, and that the objectives of the conspiracy were to obtain, through interstate wires, key codes for vehicles, allowing

---

[31]*Id*. (quoting *Evans*, 970 F.2d at 670).

those vehicles to be stolen, stripped, and then reassembled after purchasing the vehicles at auction. The vehicles were then sold in interstate commerce or used to transport cocaine in interstate commerce.  The Court bases this conclusion on both the statements of the co-conspirators and the other supporting independent evidence presented by the government.  This independent evidence includes eyewitness accounts and post-*Miranda* statements by Defendants, as well as physical evidence obtained during the arrest of various members of the conspiracy.

B.     MEMBERS OF THE CONSPIRACY

The second element the Court must consider is whether the Defendants were members of the conspiracy.  Based on this and the discussion set forth above, the Court finds that the government has proven by a preponderance of the evidence that Abraham Elliott, Levi Elliott, Nicholas Peck, and Martinez were members of the conspiracy.  The government has not shown, by a preponderance of the evidence, that Burks and Guerrero were members of the conspiracy.

C.     IN FURTHERANCE OF THE CONSPIRACY

The third element the Court must consider is whether the statements were made in the course of and in furtherance of the conspiracy.  A statement is made during the course of a conspiracy if it is made before the objectives of the conspiracy have either failed or been achieved.[32]  "Statements by a conspirator are in furtherance of the conspiracy when they are 'intended to promote the conspiratorial objectives.'"[33]  Such promotion occurs through statements that explain events of importance to the conspiracy in order to facilitate its operation, statements between co-conspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which

---

[32]*United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993).

[33]*United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (quoting *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)).

inform each other of the current status of the conspiracy, and statements of a co-conspirator identifying a fellow co-conspirator.[34]  A statement need not further the attainment of an agreement; it is enough that it further an object of the agreement.[35]

Here, the Court finds that the government has proven by a preponderance of the evidence that all but two of the statements sought to be introduced were made during the course and in furtherance of the conspiracy.  The government seeks to admit two statements by Nicholas Peck: (1) that Nicholas Peck was "looking to obtain a 'quiet' gun or to solicit murder of an unidentified individual who was about to get out of prison;"[36] and (2) that Nicholas Peck was out of town on August 15, 2006 because he was afraid that "he had drawn law enforcement attention resulting from the police raid on the illegal gambling operation [Nicholas Peck] had frequented."[37]  The government has not shown that these statements were made in furtherance of the conspiracy, and the statements will therefore be excluded.

With regard to the remaining statements sought to be admitted by the government at trial, the government has proven by a preponderance of the evidence that each statement sought to be introduced was made during the course and in furtherance of the conspiracy.  Each statement was made before the conspiracy failed.  Further, each statement was intended to promote the conspiratorial objectives of the conspiracy.

---

[34]*Id.*

[35]*United States v. Magleby*, 420 F.3d 1136, 1145 (10th Cir. 2005).

[36]Docket No. 160 at 2.  The alleged coconspirator statement also appears at Docket No. 171, Attachment A at 3.

[37]Docket No. 172 at 3, ¶ 7.

Based on the above, the Court finds that the government has proven, by a preponderance of the evidence, that each of the statements it intends to introduce, with the exception of the two statements described above, are admissible as non-hearsay pursuant to Fed.R.Evid. 801(d)(2)(E).

## IV.  CONCLUSION

SO ORDERED.  It is therefore

ORDERED that the Motions for *James* hearings filed by Nicholas F. Peck (Docket No. 99), Abraham J. Elliot (Docket No. 109), John P. Guerrero (Docket No. 111), Levi B. Elliott (Docket No. 117), Stephen G. Kirk (Docket No. 120), Caesar Martinez (Docket No. 145), and Sean Reid (Docket No. 149) are GRANTED and the hearings have been held.

DATED   March 6, 2009.

BY THE COURT:

_____

TED STEWART
United States District Judge

14